FILED
TARRANT COUNTY
8/9/2022 2:42 PM
THOMAS A. WILDER
DISTRICT CLERK

342-335353-22

CAUSE NO. _____

| | | |
|---|---|---|
| ISS AVIATION, INC (WYOMING) AND ISS AVIATION, INC. (GUYANA), | § § § | IN THE DISTRICT COURT |
| **Plaintiffs,** | § § | |
| v. | § § | _____ JUDICIAL DISTRICT |
| BELL TEXTRON, INC., | § § | |
| **Defendant.** | § § § | TARRANT COUNTY, TEXAS |

---

### PLAINTIFFS' ORIGINAL PETITION

---

TO THE HONORABLE COURT:

Plaintiffs ISS Aviation, Inc. (Wyoming) and ISS Aviation (Guyana) (collectively "Plaintiffs" or "ISS Aviation") files this Original Petition against Defendant Bell Textron, Inc. ("Bell") and states as follows:

### I.     DISCOVERY CONTROL PLAN & RULE 47 COMPLIANCE

1.     Pursuant to TEXAS RULE OF CIVIL PROCEDURE 47, Plaintiffs seeks monetary relief over $1,000,000. The damages sought are within the jurisdictional limits of the court. Plaintiffs reserves the right to supplement or amend its statement of damages.

2.     Plaintiff intends that discovery be conducted under Discovery Control Plan – Level 2, Rule 190.3 of the TEXAS RULES OF CIVIL PROCEDURE.

### II.     PARTIES

3.     Plaintiff ISS Aviation is a company incorporated in Wyoming.

4.     Plaintiff ISS Aviation, Inc. (Guyana) is a company incorporated in Co-operative Republic of Guyana.

## EXHIBIT C-1

---

**PLAINTIFFS' ORIGINAL PETITION**                                      **PAGE 1**

5.      Defendant Bell Textron, Inc. is a Delaware corporation headquartered Fort Worth, Texas and can be served through its registered agent Chandria Mercer at 3255 Bell Flight Boulevard, Fort Worth, Texas 76118 USA.

### III.      JURISDICTION AND VENUE

6.      This case is within the Court's subject matter jurisdiction. *See* TEX. GOV'T CODE § 24.008 (district courts are courts of general jurisdiction). Furthermore, the amount in controversy for this matter is within the jurisdictional limits of this Court. TEX. GOV'T CODE § 24.007.

7.      The Court possesses personal jurisdiction over Defendant as the Defendant is a resident of or conducts business in Texas.

8.      Venue is proper before the Court because the defendant's principal office is located in Tarrant County. *See* TEX. CIV. PRAC. & REM. CODE § 15.002(a)(3). Venue is also proper pursuant to section of Article 19 of the Independent Representative Agreement between Bell Helicopter Textron Inc. and ISS Aviation, Inc. dated August 15, 2018 ("Independent Representative Agreement").

### IV.      FACTUAL BACKGROUND

9.      Bell promotes and sells Bell model helicopters, accessories, and spare parts, and distributes these helicopters and aircraft parts nationally and internationally. As a part of Bell's global marketing and international business, Bell enters independent representative agreements with certain foreign aviation companies that have contacts and industry knowledge in the targeted foreign country or region.

10.      In 2013, Bell and ISS Aviation Guyana entered a business relationship whereby Bell engaged ISS Aviation Guyana as its sole independent representative for the sale of Bell helicopters and parts in the countries of Guyana, French Guiana, and Suriname.

11.     Bell expressed interest in primarily selling its helicopters to the Government of Guyana and the Guyana Defence Force in Guyana and intended to rely on ISS Aviation extensive Guyana connections to initiate and develop a business relationship.

12.     Specifically, Bell understood that ISS Aviation had strong relationships with multiple high levels of the Government of Guyana, the Guyana Defence Force and in Suriname and had excellent working relationships with the US Embassy and Canadian High Commission.

13.     Bell further knew that ISS Aviation Guyana has excellent product knowledge to include technical, marketing, operational, costs, overhaul, services, support, quality, maintenance, confidentiality, storage capabilities and more.

14.     It was ISS Aviation's qualities and more that became of significant interest to Bell and certainly were vital to establishing Bell's presence in Guyana and developing the Bell-Guyana business relationship.

15.     On or about March 15, 2014, Bell and ISS Aviation Guyana entered into an Independent Representative Agreement for ISS Aviation to act as Bell's sole Independent Representative on behalf of Bell and Bell Companies within the Authorized Territory of French Guiana, Guyana, and Suriname for the marketing and sale of products and services of Bell and the Bell Companies. Of most significance, was for ISS Aviation to establish Bell as the primary resource for the Government of Guyana and potentially other clients for their Guyana helicopter, parts, service, and other needs.

16.     Each year, ISS Aviation Guyana worked endlessly in continuing to develop the business relations between Guyana and Bell. In addition to performing the responsibilities identified in Article 4 of the Agreement, ISS Aviation performed the following activities, among other things,

on Bell's behalf to place Bell in the best position to establish and maintain a business relationship

with the Government of Guyana and the Guyana Defence Force:

i.    performed the marketing and sale of Bell helicopters, parts, and services in the authorized territory;

ii.   provided ground support for Bell helicopters arriving and departing in Guyana;

iii.  facilitated new Bell helicopters sales and marketing;

iv.   lobbied the United States Government for approval of sale of Bell helicopters to the Government of Guyana and Guyana Defence Force in order to facilitate the close of the Guyana Deal;

v.    established a United States company (with knowledge, urging, awareness, and permission from Bell) to lobby the United States Government to assist in the support of closing the Guyana Deal.

vi.   brought in Bell helicopter technical representatives to evaluate and assess any old/legacy Bell helicopter for replacement or refurbishing.

vii.  provided research and market intelligence, including ongoing evaluation of the Government of Guyana and the Guyana Defence Force's aviation operations;

viii. performed public relations in Guyana;

ix.   re-establishing the Government of Guyana and the Guyana Defence Force as a Bell client for new Bell Helicopters; the last time that Government of Guyana and the Guyana Defence Force bought a new Bell Helicopter was around 1981. The only Bell helicopters sold to the Government of Guyana since that period of around 38 years - was when two (2) pre-owned Bell 206 helicopters were sold around 2008 to the Government of Guyana and the Guyana Defence Force by ISS Aviation Inc's sister company in the United States.

x.    coordinated with Bell to source $25 million dollars in financing in 2014 and then $24 million in 2015 from the EDC (Government of Canada Export Finance Corp) for the Government of Canada to finance a fleet of new Bell helicopters for the Government of Guyana and the Guyana Defence Force;

xi.   advised Bell and adhered and complied with the FOREIGN CORRUPTION PRACTICES ACT, PATRIOT ACT and other U.S. government laws;

xii.  provided Bell helicopter storage and stored parts and equipment of behalf of Bell,

xiii. certain Logistics related to Bell parts and equipment;

xiv.    arranged the dissemination of product and marketing information, demonstration, and sale flights for Bell in Guyana to prospective clients; and

xv.     provided relevant and required support and market assessments.

17.    Bell specifically chose ISS Aviation as its sole independent representative due to its overwhelming consulting experience; ISS Aviation's knowledge of and experience in the aviation industry; Bell Helicopter product, service, operational, confidentiality and Director's aircraft sales successes over approximately 35 years with the Government of Guyana; and the Guyana Defence Force; and knowledge of the Guyana market.

18.    As compensation for ISS Aviation's representative, Bell agreed to pay ISS Aviation by certain discounts or commissions for the sale of Authorized Products and Services pursuant to Article 6 of the Agreement.

19.    Despite ISS Aviation's provision of its representative services and Bell's acceptance of the same under the Agreement, upon information and belief, Bell deliberately and intelligently sought to exclude ISS Aviation from concluding the transaction with the government of Guyana and the Guyana Defence Force.

20.    For approximately six years, ISS performed its representative obligations by working directly with Bell's regional sales manager and the vice president of the company in securing the business relations in Guyana.

21.    However, on or about early 2019, Bell removed the then regional sales manager that ISS Aviation worked with for many years. Bell did not immediately replace the regional sales manager at that time, which stifled ISS Aviation's progress in bringing the deal to a close.  After complete silence from Bell and months later, an acting regional sales manager contacted ISS Aviation asking for all of the information and updates on the Government of Guyana and the Guyana Defence Force - the Guyana Deal.

22.     Upon information and belief, the new acting regional sales manager began working behind ISS Aviation's back to meet with certain government officials of Guyana to work on closing the deal without ISS Aviation.

23.     Upon information and belief, the new acting regional sales manager, acting under Bell's direction, took all of the information and details about the deal with the Government of Guyana and the Guyana Defence Force which were gathered and created by ISS Aviation, and proceeded to deal directly with the government of Guyana and the Guyana Defence Force, excluding ISS Aviation from any involvement.

24.     ISS Aviation was never informed of the new acting regional sales manager and Bell Helicopter's management communications or dealings with the government of Guyana.

25.     On or about August of 2019, the new acting sales manager called ISS Aviation and informed ISS Aviation that it was not renewing the independent representation agreement.

26.     Upon and information belief, Bell had already began deliberately, intentionally, and wrongfully taking full control over the deal to the exclusion of ISS Aviation despite ISS Aviation being the sole independent representative.

27.     Bell's unilateral decision to take over the deal discussions without notifying ISS Aviation and its decision to deliberately, intentionally, and deliberately exclude ISS Aviation from the deal discussion runs afoul of the Independent Representative Agreement and ultimately prevented ISS Aviation from participating and concluding the deal and getting the commissions it worked six and a half years for.

28.     As a way to cover their tracks and plan to exclude ISS Aviation, Bell sent ISS Aviation's CEO and Director, a correspondence asking for ISS Aviation to identify any deals it was working on and provide the details and quantity of the deal.

29.     Upon information and belief, Bell sought to box ISS Aviation to quantities and a value that were lower than the deal Bell was working on behind ISS Aviation back. Indeed, upon information and belief, Bell had begun working on a deal to the value of $256 million dollar deal with Guyana while ISS Aviation was still the independent representative without any involvement from ISS Aviation. To be clear, ISS Aviation, according to the agreement and amendments thereto, was still the sole independent representative until September of 2019 and should not have been deliberately and intentionally excluded or prevented from continuing to perform its obligations, which were clearly continuing without ISS Aviation participation.

30.     Moreover, upon information and belief, Bell caused the Guyana Deal with the Government of Guyana and the Guyana Defence Force from materializing within the timeframe to which it agreed ISS Aviation would be owed and entitled to if the deal had come to pass within the term period of the agreement and a year thereafter.

31.     Moreover, upon information and belief, it appears that Bell completely misrepresented the parameters of the Guyana Deal with the Government of Guyana and the Guyana Defence Force by suggesting over the course of six years that the deal and work done on the deal by ISS Aviation Inc. was only valued for around $25 million dollars, and subsequently reduced to $24 million.

32.     ISS Aviation invested extensive time, effort, and money in developing Bell's business relationship with the Government of Guyana and the Guyana Defence Force in adherence to the parties' agreement and further complied with all of its obligations, in order to establish a long-term business and representation of Bell's products in Guyana to the Government of Guyana and the Guyana Defence Force.

33.     ISS Aviation reopened, revitalized, and secured the Government of Guyana and the Guyana Defence Force in the Guyana market *for* Bell helicopters, products, and services and

incurred considerable costs and tremendous resources in its marketing and in its lobbying efforts with the United States government.

34.     Bell's obstruction of ISS Aviation amounts to a breach of the parties' agreement.

35.     Bell's nondisclosure and exclusion of ISS Aviation from the deal it developed with the Government of Guyana and the Guyana Defence Force amounts to a breach of the agreement.

36.     Bell colluded and conspired with others to complete the deal with the Government of Guyana and the Guyana Defence Force without ISS Aviation, completely circumventing ISS Aviation's participation in the deal it initiated, cultivated, developed, and secured for over six and a half years.

37.     Upon information and belief, the Guyana Deal commenced at some time in 2020.

38.     According to certain news articles, the Government of Guyana and the Guyana Defence Force in Guyana has made at least two purchases in connection with the Guyana Deal that ISS Aviation initiated, cultivated, developed, and secured for Bell Helicopter.

39.     Upon information and belief, Bell and the new acting regional sales manager, new managing director, vice president and Bell's management decided not to renew the agreement based on the fact that they had already been dealing with Guyana government officials directly behind ISS Aviation's back.

40.     As of the date of this filing, Bell has not paid any of the owed commissions to ISS Aviation in relation to the Guyana Deal.

41.     In addition to commission owed on the Guyana Deal, Bell owes commission in relation to aircraft operated by a Bell customer in Guyana which owns, operates, and bought Bell helicopter parts and equipment for their two Bell helicopters from Bell, thought to be Bell helicopters with

serial numbers 52138 and 52164 based and operated in Guyana. Bell has not paid any of the accrued commission through 2019.

42.     Bell is entitled to actual, consequential, exemplary damages.

## V.     CLAIMS

### A.     Breach of Contract.

43.     The facts set forth in the paragraphs above are incorporated herein by reference.

44.     Bell and ISS Aviation Guyana entered into a valid enforceable contract.

45.     ISS Aviation Guyana is the proper party to bring a claim for breach of contract and has performed all obligations under the contract.

46.     Accordingly, all conditions precedent to Bell's performance under the contract have been satisfied.

47.     Bell breached the contract by excluding ISS Aviation out of the Guyana Deal with the Government of Guyana and the Guyana Defence Force and intentionally preventing the consummation of the deal during the representative period.

48.     Bell breached the contract by failing to pay ISS Aviation Inc. in full for the services it provided on behalf Bell pursuant to the agreement.

49.     As a direct and proximate result of Bell's breach, ISS Aviation Guyana has suffered damages.

50.     ISS Aviation Wyoming is an intended third-party beneficiary of the agreement between ISS Aviation and Bell and has also suffered damages due to Bell's breach.

### B.     Quantum Meruit.

51.     The facts set forth in the paragraphs above are incorporated herein by reference.

52.     Pleading in the alternative, and without waiving the above, Bell requested that ISS Aviation provide Bell with services.

53.     ISS Aviation did so in expectation of Bell compensating ISS Aviation Inc. for the same.

54.     Bell received and retained the benefit of services having a reasonable value in excess of $12.5 million dollars, without paying the full value for same.

**C.      Unjust Enrichment.**

55.     The facts set forth in the paragraphs above are incorporated herein by reference. ISS Aviation is entitled to recover from Bell an amount in excess of $12.5 million dollars, or such other amount shown as due and owing at the final trial of this matter, under the theories of quantum merit.

56.     On information and belief, Bell received benefits and will continue to receive benefits from the hard work initiated, cultivated, developed, and secured by ISS Aviation Inc for Bell Helicopter —the proceeds from the sale of and marketing of Bell helicopters and products related to sales in the territory of Guyana to the Government of Guyana and the Guyana Defence Force that it would be unconscionable to retain.  ISS Aviation requests judgment against Bell for all amounts equal to the commission ISS Aviation would have been entitled to from the marketing and sale of helicopters for the deal valued $256M dollars to the Government of Guyana and the Guyana Defence Force in Guyana.

**D.      Fraud/ Fraudulent Inducement.**

58.     The facts set forth in the paragraphs above are incorporated herein by reference.

59.     Bell represented to ISS Aviation that it would pay certain compensation to ISS Aviation for its services.

60.     Upon information and belief, this representation was false because Bell never intended to fully perform.

61.     Upon information and belief, Bell knew at the time of its promise that it did not intend to fully perform. Upon information and belief, Bell had already begun connecting with other third parties and potential representatives and had already started meeting with Guyana government officials in secret and unbeknownst to ISS Aviation.

62.     Bell made the representation with the intent to induce ISS Aviation to act on it.

63.     ISS Aviation did in fact rely on the representation.

64.     Bell's false representation caused ISS Aviation injury.

**E.      Fraud by Non-Disclosure.**

65.     The facts set forth in the paragraphs above are incorporated herein by reference.

66.     Bell had a duty to disclose information to ISS Aviation.

67.     The facts Bell withheld were material and Bell knew that ISS Aviation were ignorant of the facts and that ISS Aviation did not have an opportunity to discover them.

68.     Bell was deliberately silent after their initial representations it had a duty to speak.

69.     By failing to disclose the facts, Bell intended to induce ISS Aviation to take some action or refrain from taking action. ISS Aviation relied on Bell's nondisclosure and was injured as a result of acting and /or failing to act without the knowledge of the undisclosed facts.

## VI.      ATTORNEY'S FEES

70.     ISS Aviation seeks reasonable and necessary attorney's fees, expenses, and court costs it has and will incur in this suit in enforcing its rights and remedies against Bell pursuant to Sections 38.001 of the TEXAS CIVIL PRACTICE & REMEDIES CODE and all other applicable statutes of law.

## VII.   EXEMPLARY DAMAGES

71.    ISS Aviation's injuries resulted from the malice or wanton disregard of its rights by Bell, which entitles Plaintiffs to exemplary damages.

## VIII.   TRIAL BY JURY

72.    ISS Aviation hereby requests a trial by jury and will submit the appropriate jury fee.

## XI.   CONDITIONS PRECEDENT

73.    All conditions precedent, if any, to ISS Aviation's right of recovery have been performed, have occurred, or have been waived.

## X.   PRAYER

WHEREFORE, THE PREMISES CONSIDERED, Plaintiffs ISS Aviation, Inc., (Wyoming) and ISS Aviation (Guyana); respectfully pray and request that Bell Helicopter Textron, Inc. be cited to appear and answer herein and that the Court award Plaintiffs judgment against Bell Textron, Inc. for damages, including without limitation actual damages, consequential, exemplary damages, as well as attorney's fees, costs of Court, and pre- and post-judgment interest. Plaintiffs respectfully request the Court grant all other relief to which Plaintiffs are justly entitled.

Dated: August 9, 2022

Respectfully submitted,

*/s/ Jervonne D. Newsome*
Jervonne D. Newsome
Texas Bar No. 24094869
jnewsome@lynnllp.com
**LYNN PINKER HURST & SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3800
Facsimile:  (214) 981-3839

**ATTORNEY FOR PLAINTIFFS**
**ISS AVIATION, INC (WYOMING) AND**
**ISS AVIATION, INC. (GUYANA),**

FILED
TARRANT COUNTY
8/9/2022 3:16 PM
THOMAS A. WILDER
DISTRICT CLERK

# Lynn**Pinker**Hurst**Schwegmann**, LLP

NATALIE STALLBOHM
*Assistant*

D 214 981 3833
F 214 981 3839
nstallbohm@lynnllp.com

2100 Ross Avenue
Suite 2700
Dallas, Texas 75201
**lynnllp.com**


August 9, 2022


**e-File Texas**
Clerk
342nd Judicial District Court
100 N. Calhoun, 5th Floor
Fort Worth, Texas 76196

      Re:    Case No. 342-335353-22; *ISS Aviation, Inc. (Wyoming)*, et al., v. *Bell Textron, Inc.*; In the 342nd Judicial District Court in Tarrant County, Texas

Dear Clerk:

    Please email the requested citation in the above referenced matter to attorney Jervonne D. Newsome at jnewsome@lynnllp.com.

    The citation has been paid as shown in Envelope No. 67107943.

                  Respectfully submitted,

                  *Natalie Stallbohm*
                  Natalie Stallbohm
                  Assistant to Jervonne D. Newsome

/ns


# EXHIBIT C-2

CAUSE NO. 342-335353-22

| | | |
|---|---|---|
| ISS AVIATION, INC (WYOMING) AND | § | IN THE DISTRICT COURT |
| ISS AVIATION, INC. (GUYANA), | § | |
| | § | |
| *Plaintiffs*, | § | |
| v. | § | 342nd JUDICIAL DISTRICT |
| | § | |
| BELL TEXTRON, INC. | § | |
| | § | |
| *Defendant*. | § | TARRANT COUNTY, TEXAS |

### NOTICE OF REMOVAL

TAKE NOTICE that, in accordance with 28 U.S.C. §§ 1332, 1441 and 1446, Defendant, Bell Textron, Inc. filed a notice of removal of this action in and to the United States District Court for the Northern District of Texas, Fort Worth Division, on August 10, 2022.  A copy of the Notice of Removal filed in the United States District Court, along with all ancillary documents and exhibits, has been served on all counsel of record as attached to this notice and served and filed herewith.  *See* **Exhibit A.**

In accordance with 28 U.S.C. §1446, the State Court shall proceed no further with the action bearing Cause No. 342-335353-22.

Dated: August 10, 2022                    Respectfully submitted,

*/s/ J. Austin Franklin*
J. Austin Franklin

# EXHIBIT C-3

Lars L. Berg
State Bar No. 00787072
lars.berg@kellyhart.com
J. Austin Franklin
State Bar No. 24075853
austin.franklin@kellyhart.com
Christian Martinez
State Bar No. 24126138
christian.martinez@kellyhart.com
**KELLY HART & HALLMAN LLP**
201 Main Street, Suite 2500
Fort Worth, Texas 76102
817.878.3597
817.878.9797 fax

**COUNSEL FOR DEFENDANT
BELL TEXTRON, INC.**

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing will be served via the Court's e-filing service and electronic mail, on counsel of record, on August 10, 2022:

Jervonne D. Newsome
Texas Bar No. 24094869
jnewsome@lynnllp.com
LYNN PINKER HURST & SCHWEGMANN, LLP
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3800
Facsimile: (214) 981-3839

**ATTORNEY FOR PLAINTIFFS
ISS AVIATION, INC (WYOMING) AND
ISS AVIATION, INC. (GUYANA)**

*/s/ J. Austin Franklin*
J. Austin Franklin