**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **ISS AVIATION, INC. (WYOMING), et al.,** | § § § | |
| **Plaintiffs,** | § § | |
| **v.** | § § | **Civil Action No.  4:22-CV-00689-O** |
| **BELL TEXTRON, INC.,** | § § | |
| **Defendant.** | § § | |

<u>**ORDER**</u>

Before the Court are Defendant Bell Textron, Inc.'s Motion to Dismiss (ECF No. 7), filed September 27, 2022; Plaintiffs ISS Aviation, Inc. (Wyoming) and ISS Aviation, Inc. (Guyana)'s Response (ECF No. 14), filed October 25, 2022; and Defendant's Reply (ECF No. 18). For the reasons contained herein, Defendant's Motion is hereby **GRANTED in part** and **DENIED in part**.

Also before the Court are Plaintiffs' Motion for Leave to File Amended Complaint (ECF No. 17), filed October 25, 2022; Defendant's Response (ECF No. 19), filed November 8, 2022; and Plaintiffs' Reply (ECF No. 23), filed November 22, 2023. For the reasons contained herein, Plaintiffs' Motion is hereby **GRANTED in part** and **DENIED in part**.

**Defendant's Motion to Dismiss**

I.      **Factual Background**[1]

Plaintiffs ISS Aviation, Inc. (Wyoming) ("ISS Wyoming") and ISS Aviation, Inc. (Guyana) ("ISS Guyana") bring this lawsuit against Defendant Bell Textron, Inc. Defendant promotes and sells model helicopters, accessories, and spare parts, nationally and internationally.

On or about March 15, 2013, Defendant and ISS Guyana entered into the first Independent Representative Agreement ("IRA"), wherein Defendant and ISS Guyana agreed that ISS Guyana would be Defendant's independent representative on behalf of Defendant within the Authorized Territory of French Guinea, Guyana, and Suriname. ISS Guyana[2] was to establish Defendant as the primary resource for the Government of Guyana for their helicopters, parts, services, and other needs. In return, as part of the Parties' agreement, Defendant promised to support ISS Guyana in its efforts to promote the sale of Authorized Products and Services and timely accept or reject offers to purchase Authorized Products and Services by or obtained by ISS Guyana. Defendant renewed ISS Guyana as its independent representative five times between 2014 and 2018 by signing new IRAs containing similar terms and compensation structure as the initial IRA, and each expiring by their own terms after either one or two years.

Plaintiffs purport that Defendant was aware there were deliberate attempts by various entities and rival companies in Guyana to "financially ruin" ISS Guyana over the course of the

---

[1] Unless otherwise cited, the Court's recitation of the facts is taken from Plaintiffs' Amended Complaint. *See* Am. Compl., ECF No. 4. At this stage, these facts are taken as true and viewed in the light most favorable to the plaintiffs. *See Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007).

[2] Throughout the Amended Complaint, Plaintiffs refer to "ISS Aviation," which is confusing as both Plaintiffs are related to ISS Aviation. The Court presumes based on context that "ISS Aviation" as utilized by Plaintiffs in the recitation of the facts in the Amended Complaint refers to ISS Guyana, and, as such, the Court has adopted the use of "ISS Guyana" throughout. Further, looking at the "Factual Background" section of the Amended Complaint, it is never explained who ISS Wyoming is and/or how it fits into this litigation. *See* Am. Compl., ECF No. 4.

Parties' contractual relationship. For example, Plaintiffs contend that some of these companies conspired with certain airport officials of the Government of Guyana to obstruct the business operations of ISS Guyana. Plaintiffs contend Defendant did nothing to assist ISS Guyana with these entities.

In 2017 and 2018, Mr. Jay Ortiz, a representative of Defendant, allegedly made representations to ISS Guyana regarding Defendant's commitment to support ISS Guyana's efforts to secure a profitable deal known as the "Guyana Deal."[3] Specifically, Mr. Ortiz and other members of management of Defendant represented that it would provide full support, including political support, to ISS Guyana to close the Guyana Deal. This support included the careful coordination of all meetings, visits, emails and phone calls to the Government of Guyana to close the transaction. Mr. Ortiz told ISS Guyana to keep pressing ahead with its representation of Defendant.

On August 15, 2018, the Parties entered into their final IRA ("the 2018 IRA"), extending the Parties' contractual relationship for another one-year term.

In early 2019, Plaintiffs discovered Defendant's prior regional sales manager, with whom ISS Guyana worked with for years, was no longer working for Defendant. Months later, an acting regional sales manager contacted ISS Guyana asking for all information regarding the Guyana Deal. The new acting regional sales manager allegedly represented that the value of the Guyana Deal at that time was approximately $24 million. Plaintiffs contend that the new acting regional sales manager, operating under Defendant's direction, proceeded to deal directly with the government of Guyana and the Guyana Defence Force, excluding ISS Guyana from any

---

[3] Throughout the Amended Complaint, Plaintiffs refer to the "Guyana Deal" although they fail to immediately define what the Deal is or the background behind the Deal. The Court presumes the "Guyana Deal" refers to the allegedly $256 million deal resulting from two sales to the Government of Guyana and the Guyana Defence Force in 2020.

involvement. On or about August of 2019, Defendant's new acting sales manager contacted ISS Guyana and informed ISS Guyana that Defendant would not be renewing the IRA at the expiration of the 2018 IRA.

The Guyana Deal commenced "some time in 2020."[4] According to certain news articles, the Guyana Deal constituted at least two purchases made by the Government of Guyana and the Guyana Defence Force, purportedly valued at $256 million. In addition to commission owed on the Guyana Deal, Plaintiffs claim Defendant owes commission in relation to Defendant's sale of helicopter parts and equipment for two helicopters based and operated in Guyana, thought to be helicopters with serial numbers 52138 and 52164.

On August 9, 2022, Plaintiffs filed this lawsuit in the Tarrant County District Court.[5] Defendant removed this case to federal court on August 10, 2022.[6] Plaintiffs filed an amended complaint on August 30, 2022.[7] On September 27, 2022, Defendant filed a motion to dismiss Plaintiffs' amended complaint.[8] Plaintiffs filed their response on October 25, 2022.[9] Defendant filed its reply on November 8, 2022.[10]

On October 25, 2022, Plaintiffs filed a motion for leave to file an amended complaint.[11] On November 8, 2022, Defendant filed its response to Plaintiffs' motion.[12] Plaintiffs stated that they filed the motion for leave to file an amended complaint solely as a precaution *should* the Court grant Defendant's motion to dismiss.[13] All motions are now ripe for the Court's review.

---

[4] Am. Compl. ¶ 67, ECF No. 4.
[5] Pl. Orig. Pet., ECF No. 1-3.
[6] Not. of Removal, ECF No. 1.
[7] Am. Compl., ECF No. 4.
[8] Def. Mot., ECF No. 7.
[9] Pls. Resp., ECF No. 14.
[10] Def. Reply, ECF No. 18.
[11] Pls. Mot. for Leave, ECF No. 17.
[12] Def. Resp., ECF No. 19.
[13] *See* Pls. Resp. to Court Order, ECF No. 22.

## II.     Legal Standard

Rule 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). If a plaintiff fails to satisfy Rule 8(a), the defendant may file a motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up) (quoting *Twombly*, 550 U.S. at 557). A court may not accept legal conclusions as true. *Id.* at 678–79. When well-pleaded factual allegations are present, a court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

### III.    Analysis

Plaintiffs bring claims for breach of contract;[14] quantum meruit;[15] promissory estoppel;[16] unjust enrichment;[17] fraud/fraudulent inducement;[18] and fraud by non-disclosure.[19] Defendant moves to dismiss all of Plaintiffs' claims.[20]

#### A.  Breach of Contract

Plaintiffs first bring a claim for breach of contract, alleging that Defendant and ISS Guyana entered into a valid enforceable contract, which Defendant breached by excluding ISS Guyana from the Guyana Deal and by intentionally preventing the consummation of the deal during the representative period.[21] Plaintiffs further contend Defendant breached the contract by failing to pay ISS Guyana in full for the services it provided on behalf of Defendant pursuant to the IRA.[22] Finally, Plaintiffs allege that ISS Wyoming was an intended third-party beneficiary of the agreement between ISS Guyana and Defendant and suffered damages due to Defendant's breach.[23]

Under Texas law, "[b]reach of contract requires pleading and proof that (1) a valid contract exists; (2) the plaintiff performed or tendered performance as contractually required; (3) the defendant breached the contract by failing to perform or tender performance as contractually required; and (4) the plaintiff sustained damages due to the breach." *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019) (citing *USAA Tex. Lloyds Co. v.*

---

[14] Am. Compl. ¶¶ 73–81, ECF No. 4.
[15] *Id.* at ¶¶ 81–84.
[16] *Id.* at ¶¶ 85–89.
[17] *Id.* at ¶¶ 90–93.
[18] *Id.* at ¶¶ 94–103.
[19] *Id.* at ¶¶ 104–08.
[20] *See generally* Def. Mot., ECF No. 7.
[21] Am. Compl. ¶¶ 74, 77, ECF No. 4.
[22] *Id.* at ¶ 78.
[23] *Id.* at ¶ 81.

*Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018)). To successfully plead a breach of contract claim, a plaintiff must "identify a specific provision of the contract that was allegedly breached." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Georgia, Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. 2014).

### 1.   Article 6 of the 2018 IRA

Defendant first contends that Plaintiffs' breach of contract claim must be dismissed because Plaintiffs are not entitled to commissions for sales that were procured after the expiration date of the 2018 IRA.[24] Defendant highlights Article 6 of the 2018 IRA wherein it states, "[o]rders received outside of the Term of Appointment set forth in Article [sic] 2.b ***will not be eligible to receive a commission*** [or discount], ***regardless of when such order was initiated*** unless otherwise agreed to by [Defendant] under a separate written agreement."[25] Plaintiffs are seeking commission payments for the Guyana Deal that commenced "sometime in 2020."[26] Defendant contends that the 2018 IRA expired on August 14, 2019.[27] Plaintiff provides evidence of an amendment to the 2018 IRA that the Parties entered into wherein the termination date was extended to September 30, 2019.[28] Either way, the 2018 IRA expired, at latest, on September 30, 2019, before the commencement of the Guyana Deal.

### 2.   Articles 5(a) and (e) of the 2018 IRA

Regardless, Plaintiffs contend Defendant nevertheless breached the contract by failing to provide support and sales assistance to ISS Guyana and by engaging in actions that Plaintiffs argue ultimately obstructed the completion of the Guyana Deal during the term of the IRA.[29] In terms of

---

[24] Def. Brief 11, ECF No. 8.
[25] *Id.* (alterations in original); Def. App. 96, ECF No. 9.
[26] Am. Compl. ¶ 67, ECF No. 4.
[27] Def. App. 95, ECF No. 9.
[28] Pls. App. 5, ECF No. 16.
[29] Pls. Resp. Brief 7, ECF No. 15.

what contractual provisions were breached, Plaintiffs loosely allege that Defendant breached Articles 5(a) and 5(e) of the 2018 IRA.[30]

Looking at the 2018 IRA, Article 5 spells out Defendant's duties.[31] Article 5(a) states that Defendant agrees to "[s]upport [ISS Guyana] in its efforts to promote the sale of Authorized Products and Services in the Authorized Territory during the Term of Appointment."[32] Article 5(e) states that Defendant agrees to "[t]imely accept or reject offers to purchase Authorized Products and Services by or obtained by Representative."[33]

Regarding Article 5(e), the Court finds that Plaintiffs do not allege facts to show that Defendant failed to timely accept or reject offers to purchase Authorized Products and Services during the term of the agreement. Therefore, Plaintiffs fail to sufficiently allege that Defendant breached Article 5(e). Turning to Article 5(a), Defendant highlights that, under Article 5(c) of the IRA, Defendant was only contractually obligated to "[g]enerally render such sales assistance as may be, **in** [Defendant's] **sole judgment, reasonable and appropriate.**"[34] Therefore, Defendant contends, the Parties expressly agreed Defendant had the sole right to determine how to perform the sales assistance that Plaintiffs "take umbrage with" in this lawsuit.[35] Plaintiffs counter that Article 5(c) should not be read in conjunction with 5(a) and that, at best, there is an ambiguity in the agreement based on different interpretations.[36] Plaintiffs state that it is for the jury to decide

---

[30] Am. Compl. ¶ 27, ECF No. 4; Pls. Resp. Brief 2, ECF No. 15. In the Amended Complaint, Plaintiffs fail to state which contractual provisions they feel were breached but use language from Articles 5(a) and 5(e).

[31] *See* Def. App. 96, ECF No. 9.

[32] *Id.*

[33] *Id.*

[34] Def. Brief 13, ECF No. 8 (quoting Def. App. 96, ECF No 9) (emphasis in original).

[35] *Id.*

[36] Pls. Resp. Brief 3, ECF No. 15.

whether 5(a) and 5(c) are discussing the same subject matter, how these provisions should be read together, and whether Article 5(a) was breached.[37]

"The primary concern of a court in construing a written contract is to ascertain the true intentions of the parties as expressed in the instrument." *Texas v. Am. Tobacco Co.*, 463 F.3d 399, 407 (5th Cir. 2006) (citations omitted). "Contracts are construed in their entirety, and it is the Court's duty 'to consider each part with every other part so that the effect and meaning of one part on any other part may be determined.'" *Id.* at 408 (quoting *Smart v. Tower Land & Inv. Co.*, 597 S.W.2d 333, 337 (Tex. 1980)). "[C]ourts must be particularly wary of isolating from its surroundings or considering apart from other provisions a single phrase, sentence, or section of a contract." *Id.* (quoting *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995)). "Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered." *Id.* at 407 (quoting *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983)). "If a written contract is worded such that it can be given a definite or certain legal meaning, then it is not ambiguous." *Id.* (citing *Nat'l Union Fire Ins. Co. of Pittsburgh v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995)). "If the contract's meaning is uncertain and doubtful, or it is reasonably susceptible to more than one meaning, it is ambiguous." *Id.* (citing *Coker*, 650 S.W.2d at 393–94).

In this case, the Court finds that the contract language is unambiguous. Defendant's obligation to "[s]upport [ISS Guyana's] efforts to promote the sale" of Defendant's Authorized Products and Services,[38] as set forth in Article 5(a), is the same as Defendant's obligation to "[g]enerally render . . . sales assistance," as set forth in Article 5(c).[39] Reading the two clauses

---

[37] *Id.*

[38] Def. App. 96, ECF No. 9.

[39] *Id.*

together, Court finds that the clear, unambiguous meaning of the contract is that Article 5(c) is meant to place limits on Defendant's obligations under Article 5(a). Furthermore, Plaintiffs fail to articulate an alternative interpretation of 5 for how Article 5(a) and (c) should be interpreted in relation to one another.[40] Accordingly, the Court finds that the Parties agreed and intended that Defendant would have an obligation to provide sales assistance to ISS Guyana, but that Defendant would only be obligated to provide such assistance as Defendant thought reasonable and appropriate. Therefore, any breach of contract claim based on an alleged failure of Defendant to provide sufficient sales assistance regarding the Guyana Deal fails.

### 3.   Air Services, Ltd. Transactions

Plaintiffs, in their response, vaguely allege that Defendant breached the 2018 IRA by failing to pay ISS Guyana commissions for transactions involving Air Services, Ltd.[41] Plaintiffs cite to Paragraph 71 of the Amended Complaint, which states that Defendant owes commission in relation to aircraft operated by Air Services, Ltd. in Guyana, which owns, operates, and bought Defendant helicopter parts and equipment for their two helicopters purchased from Defendant.[42] Paragraph 71 is the only mention of Air Services, Ltd. or any transactions with Air Services, Ltd. in the entire Amended Complaint.[43] Plaintiffs fail to state which provisions of the 2018 IRA such transactions violated. Plaintiffs fail to specify when these transactions even occurred. Altogether, the Court finds that any breach of contract claim based on these alleged transactions involving Air Services, Ltd. fails as the Amended Complaint does not contain factual allegations sufficient to support such a claim.

---

[40] *See* Pls. Resp. Brief, ECF No. 15. [41] *Id.* at 8.
[42] Am. Compl. ¶ 71, ECF No. 4.
[43] *See id.*

### 4. Duty to Cooperate

Plaintiffs also assert Defendant breached its duty to cooperate under the 2018 IRA by engaging in actions that prevented ISS Guyana's performance of the IRA.[44] Defendant counters that an implied duty to cooperate should not be imposed in the 2018 IRA as the IRA already defines Defendant's obligation to cooperate.[45] Further, Defendant argues that, even if there was an implied duty to cooperate, Defendant did not breach said duty.[46]

"The parties' obligations under a contract are, for the most part, limited to those stated within the written agreement." *Miller v. Ret. Sys. Grp., Inc.*, No. H-09-834, 2011 WL 13340637, at *9 (S.D. Tex. Jan. 31, 2011), adopting report and recommendation sub nom. *Miller v. RSGroup Tr. Co.*, No. H-09-834, 2011 WL 13340640 (S.D. Tex. Apr. 26, 2011) (citing *Universal Health Servs., Inc. v. Renaissance Women's Grp., P.A.*, 121 S.W.3d 742, 747 (Tex. 2003)). However, the court may imply a covenant when necessary to reflect the parties' actual intentions. *Universal Health Servs., Inc.*, 121 S.W.3d at 747. The implied covenant must appear, based on the express terms, "so clearly within the contemplation of the parties that they deemed it unnecessary to express it." *Id.* at 748 (quoting *Danciger Oil & Ref. Co. of Tex. v. Powell*, 154 S.W.2d 632, 635 (Tex. 1941)). Texas implies a duty to cooperate "in every contract in which cooperation is necessary for performance of a contract." *Bank One, Tex., N.A. v. Stewart*, 967 S.W.2d 419, 434 (Tex. App.—Houston [14th Dist.] 1998, pet. denied). When applicable, the duty to cooperate prohibits a party to a contract from hindering, preventing, or interfering with the other party's ability to perform his contractual duties. *Id.* at 435.

---

[44] Pls. Resp. Brief 6–7, ECF No. 15.
[45] Def. Reply 4, ECF No. 18.
[46] *Id.* at 4–5.

In this case, the Court finds that Plaintiffs have sufficiently pled the existence of an implied duty to cooperate on the part of Defendant. The issue therefore is whether Defendant breached the duty.

Defendant contends that it did not breach its duty to cooperate under the 2018 IRA, as Defendant did not prevent ISS Guyana from fulfilling its contractual duties.[47] Specifically, Defendant contends that ISS Guyana was not contractually obligated to secure a sale to the government of Guyana, and that ISS Guyana's only contractual duties concerned how ISS Guyana was to conduct business (e.g., ISS Guyana is obliged to office in Guyana, comply with global anti-corruption laws, conduct reasonable due diligence into prospective customers).[48] ISS Guyana counters that Defendant engaged in actions that prevented its performance of the contract and ultimately obstructed completion of the Guyana Deal.[49] Specifically, ISS Guyana alleges that Defendant took "full control over the deal to the exclusion of ISS Guyana despite ISS Guyana being the sole independent representative"; that during the term of the IRA, [Defendant's] "new acting regional sales manager and [Defendant's] Management conducted various meetings with Guyanese officials and others without telling ISS Guyana despite the fact that ISS Guyana was the representative"; that [Defendant's] unilateral decision to take over the deal discussions without notifying ISS Guyana and its decision to exclude ISS Guyana deliberately and intentionally from the deal discussion runs afoul of the [IRA] and ultimately prevents ISS Guyana from participating and concluding the deal and getting the commissions it earned[.]"[50]

At the motion to dismiss stage, the Court finds that ISS Guyana has sufficiently pleaded facts to support the claim that Defendant prevented ISS Guyana from performing as Defendant's

---

[47] Def. Reply 5, ECF No. 18.
[48] *Id.*
[49] Pls. Resp. Brief 7, ECF No. 15.
[50] *Id.* (quoting Am. Compl. ¶¶ 54–55).

sole independent representative in the region under the 2018 IRA. Defendant's motion to dismiss ISS Guyana's breach of contract claim on this point is **DENIED**.

### 5. ISS Wyoming

Plaintiffs lastly allege that ISS Wyoming was an intended third-party beneficiary of the agreement between ISS Guyana and Defendant and suffered damages due to Defendant's breach.[51]

"A third party may recover on a contract made between other parties only if the parties intended to secure some benefit to that third party, and only if the contracting parties entered into the contract directly for the third party's benefit." *Mokhtar v. Penn-Am. Ins. Co.*, No. 3:16-CV-01168-O, 2016 WL 9527963, at *4 (N.D. Tex. June 22, 2016) (emphasis omitted) (quoting *MCI Telecomm. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999)). "In determining whether a third party can enforce a contract, the intention of the contracting parties is controlling. The intention to contract or confer a direct benefit to a third party must be clearly and fully spelled out or enforcement by the third party must be denied." *Id.* (quoting *MCI Telecomm. Corp.*, 995 S.W.2d at 651).

In this case, Plaintiffs fail to provide any evidence that the Parties intended for ISS Wyoming to be a third-party beneficiary to the 2018 IRA. Plaintiffs fail to point to any provision of the contract wherein ISS Wyoming was designated a third-party beneficiary. Plaintiffs fail to cite to any provision in the 2018 IRA, or in the Parties' negotiations before signing the 2018 IRA, where ISS Wyoming was mentioned at all. Therefore, the Court finds that ISS Wyoming fails to sufficiently allege a breach of contract claim. ISS Wyoming's breach of contract claim thereby fails.

---

[51] Am. Compl. ¶ 81, ECF No. 4.

### 6.  Breach of Contract Conclusion

To conclude, Defendant's motion to dismiss is hereby **GRANTED** as to any breach of contract claim asserted by ISS Wyoming. Also, Defendant's motion to dismiss is hereby **GRANTED** as to any breach of contract claim based on an alleged failure of Defendants to provide sufficient sales assistance under the IRA. Further, Defendant's motion to dismiss is hereby **GRANTED** as to any breach of contract claim based on the alleged transactions involving Air Services, Ltd. However, Defendant's motion to dismiss is **DENIED** as to Defendant's alleged breach of the duty to cooperate. Therefore, the sole surviving argument for breach of contract is ISS Guyana's claim that Defendant breached its implied duty to cooperate under the 2018 IRA.

### B.  Quantum Meruit

Plaintiffs secondly bring a claim for quantum meruit.[52] To succeed on a quantum meruit claim, the claimant must prove:

> (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) those services and materials were accepted by the person sought to be charged, and were used and enjoyed by him; and (4) the person sought to be charged was reasonably notified that the plaintiff performing such services or furnishing such materials was expecting to be paid by the person sought to be charged.

*In re BJ Servs., LLC*, No. 20-33627, 2023 WL 2311986, at *4 (Bankr. S.D. Tex. Mar. 1, 2023) (emphasis omitted) (quoting *Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 732–33 (Tex. 2018)). "[A] party may recover under quantum meruit only when there is no express contract covering the services or materials furnished." *Moncrief v. Tech Pharmacy Servs., LLC*, No. 3:22-cv-1654-X, 2023 WL 416549, at *2 (N.D. Tex. Jan. 25, 2023) (quoting *Vortt Exploration Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990)).

---

[52] Am. Compl. ¶¶ 81–84, ECF No. 4.

Defendant contends, and the Court agrees, that the 2018 IRA clearly sets out the contractual obligations of Defendant and ISS Guyana, and all the services performed by ISS Guyana were contemplated by the 2018 IRA.[53] Accordingly, ISS Guyana cannot recover under quantum meruit. Furthermore, the IRA was between ISS Guyana and Defendant, and Plaintiffs fail to plead facts to show that Defendant was ever reasonably notified that ISS Wyoming performed work on Defendant's behalf or that ISS Wyoming expected to be paid by Defendant.[54] As such, the Court agrees with Defendant's contention that ISS Wyoming's quantum meruit claim must be dismissed.[55] Therefore, both ISS Guyana's and ISS Wyoming's claims for quantum meruit are **DISMISSED**.

### C. Promissory Estoppel

Plaintiffs thirdly bring a claim for promissory estoppel.[56] "To prevail on a promissory estoppel claim under Texas law, a plaintiff must show: '(1) a promise; (2) foreseeability of reliance thereon by the promisor; and (3) substantial reliance by the promisee to his detriment.'" *Howard v. Bank of N.Y. Mellon*, No. 3:12-CV-1143-O, 2012 WL 13024096, at *2 (N.D. Tex. Nov. 27, 2012) (quoting *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983)). "[I]f a valid contract between the parties covers the alleged promise, a plaintiff may not recover under a promissory estoppel theory." *Id.* (citing *Fertic v. Spencer*, 247 S.W.3d 242, 250 (Tex. App.—El Paso 2007, pet. denied)).

Plaintiffs allege that Defendant promised to respect ISS Guyana's rights as Defendant's independent representative.[57] They further contend Defendant promised that it would support

---

[53] Def. Brief 16–17, ECF No. 8.
[54] *Id.*
[55] *Id.* at 17.
[56] Am. Compl. ¶¶ 85–89, ECF No. 4.
[57] *Id.* at ¶ 86.

Plaintiffs with the tools and resources necessary to secure the Guyana Deal.[58] They also state that Defendant promised it would pay ISS Guyana commissions for transactions procured by ISS Guyana on Defendant's behalf.[59] Finally, they allege that it was foreseeable Plaintiffs would rely on Defendant's promises, and that Plaintiffs did in fact rely on Defendant's promises to their detriment.[60] Regarding ISS Wyoming, Plaintiffs contend that, as ISS Wyoming was not a party to the 2018 IRA, ISS Wyoming is entitled to seek compensation and damages for the benefit it conferred on Defendant.[61]

The Court finds that the alleged promises by Defendant were covered by the 2018 IRA. Furthermore, pursuant to its own terms, the 2018 IRA "constitutes the entire Agreement of the Parties with respect to the subject matter of [the] Agreement."[62] Therefore, to the extent Defendant made any extra-contractual promises, it was not foreseeable that Plaintiffs would rely on any such promises. Regarding ISS Wyoming specifically, the Court finds that Plaintiffs fail to sufficiently plead that Defendant made any promises to ISS Wyoming or that ISS Wyoming substantially relied on any such promises. Accordingly, Plaintiffs' promissory estoppel claims are **DISMISSED**.

### D. Unjust Enrichment

Plaintiffs next bring a claim for unjust enrichment. "A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Elias v. Pilo*, 781 F. App'x 336, 338 (5th Cir. 2019) (quoting *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)). "In Texas, unjust

---

[58] *Id.*
[59] *Id.*
[60] *Id.*
[61] Pls. Resp. Brief 13, ECF No. 15.
[62] Def. App. 103, ECF No. 9.

enrichment is based on quasi-contract and is unavailable when a valid, express contract governing the subject matter of the dispute exists." *JPM Restoration, Inc. v. ARES LLC*, No. 3:20-cv-3160-B, 2021 WL 487696, at *3 (N.D. Tex. Feb. 10, 2021) (quoting *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 454 (5th Cir. 2001)). "[I]n general, unless one party disputes the existence of a contract that governs the parties' relationship, [plaintiffs] cannot maintain an unjust-enrichment counterclaim—even if pleaded in the alternative." *Id.* (cleaned up).

In this case, the Court finds that the 2018 IRA governs the subject matter of Plaintiffs' claims. Also, the Parties have expressly agreed that the 2018 IRA governs the Parties' relationship. Regarding ISS Wyoming, Plaintiffs fail to allege facts to show ISS Wyoming has a viable unjust enrichment claim. Therefore, Plaintiffs' unjust enrichment claims must be **DISMISSED**.

### E. Fraud/Fraudulent Inducement

Plaintiffs bring a claim for fraud/fraudulent inducement. The essential elements of a fraud claim are: "(1) that a false, material representation was made; (2) that was either known to be false when made or was made without knowledge of its truth; (3) that was intended to be acted upon; (4) that was relied upon; and (5) that caused injury." *Express Working Cap., LLC v. Starving Students, Inc.*, 28 F. Supp. 3d 660, 672 (N.D. Tex. 2014) (quoting *Hubbard v. Shankle*, 138 S.W.3d 474, 482–83 (Tex. App.—Fort Worth 2004, pet. denied)). "Fraudulent inducement is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof." *Id.* (cleaned up) (quoting *LeTourneau Techs. Drilling Sys., Inc. v. Nomac Drilling, LLC*, 676 F. Supp. 2d 534, 542 (S.D. Tex. 2009)). To prove their fraudulent inducement claim, Plaintiffs must establish the elements of fraud as they relate to the 2018 IRA. *Id.*

Rule 9(b) provides, in pertinent part, that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FED. R. CIV. P. 9(b).

"The amount of particularity required for pleading fraud differs from case to case." *Flu Shots of Tex., Ltd. v. Lopez*, No. 3:13-cv-144-O, 2014 WL 1327706, at *8 (N.D. Tex. Apr. 3, 2014). "In the Fifth Circuit, the Rule 9(b) standard requires 'specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent.'" *Id.* (quoting *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). "Essentially, the standard requires the Complaint to allege answers to 'newspaper questions' ('who, what, when, where, and how') of the alleged fraud." *Id.* (citing *Melder v. Morris*, 27 F.3d 1097, 1100 n.5 (5th Cir. 1994)). The pleading standard under Rule 9(b) is more "relaxed" regarding pleadings of intent and state of mind. *Id.* at *10.

Plaintiffs contend that Mr. Ortiz, Defendant's former representative, made several representations in 2017 and 2018 regarding Defendant's commitment to Plaintiff ISS Guyana. Mr. Ortiz allegedly supported ISS Guyana by introducing ISS Aviation to U.S. government programs to help close the Guyana Deal, and by coordinating meetings, visits, emails, and phone calls to ensure there was one comprehensive and carefully executed strategy in working with the Guyana government.[63] Plaintiffs state that Defendant, through Ortiz's statements, "lied" because Defendant "never intended to provide [Plaintiffs] with the support and assistance or tools [they] needed, despite [Defendant's] knowledge that [Plaintiffs] suffered significant attacks to its operations" on Defendant's behalf.[64] Plaintiffs assert that Defendant made the representations with the intent to induce Plaintiffs to act on them, and Plaintiffs relied on the representations when it executed the August 2018 IRA.[65]

---

[63] Am. Compl. ¶ ¶ 36–40, ECF No. 4.
[64] *Id.* at ¶ 42.
[65] *Id.* at ¶¶ 36, 41.

Defendants contend that Plaintiffs' fraudulent inducement claim must be dismissed because it relies on terms outside of the 2018 IRA.[66] "Under Texas law, . . . parties challenging contracts as fraudulently induced may rely on evidence of oral promises or agreements to support their claims." *LeTourneau Techs. Drilling Sys., Inc.*, 676 F. Supp. 2d at 542 (citation omitted). However, "[t]o establish the 'justifiable reliance' element of a fraud claim, the plaintiff's reliance on the defendant's false statement must have been reasonable." *Id.* (citing *Ortiz v. Collins*, 203 S.W.3d 414, 421 (Tex. App.—Houston [14th Dist.] 2006, no pet.)). "Reliance upon an oral representation that is directly contradicted by the express, unambiguous terms of a written agreement between the parties is not justified as a matter of law." *Id.* at 542–43 (citing *DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.*, 112 S.W.3d 854, 858 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (en banc)). "Thus, while a plaintiff may be able to introduce parol evidence of a defendant's misrepresentations in order to prove a claim of fraudulent inducement, where that parol evidence is directly contradicted by the express terms of the written agreement the plaintiff will fail to prove the element of justifiable reliance." *Id.* at 543.

Defendant contends that Plaintiffs' allegations cannot be reconciled with the merger clause contained within the 2018 IRA,[67] which states that the agreement "constitutes the entire Agreement of the Parties with respect to the subject matter of the subject matter of this Agreement and supersedes all prior Agreements or understandings, written or oral."[68] Plaintiff cites to *Dunbar Medical Systems, Inc. v. Gammex, Inc.* to support its contention that the Fifth Circuit has held that merger clauses do not preclude fraudulent inducement claims.[69] *See* 216 F.3d 441, 448–49, 451 (5th Cir. 2000). In *Dunbar*, the Fifth Circuit held that, in determining whether a merger clause

---

[66] Def. Brief 21, ECF No. 8.
[67] Def. Brief 22, ECF No. 8.
[68] Def. App. 103, ECF No. 9.
[69] Pls. Resp. Brief 10, ECF No. 15.

precludes a fraudulent inducement claim, the court must look at the agreement as a whole to determine whether the agreement "clearly expresses the parties' intent to waive fraudulent inducement claims, or . . . disclaims reliance on representations about specific matters in dispute." *Id.* at 449 (cleaned up).

In this case, after looking at the 2018 IRA as a whole, the Court cannot say that the IRA reflects the "requisite clear and unequivocal expression of intent necessary to disclaim reliance on the [ ] specific representations" by Plaintiffs. *Id.* at 451 (quoting *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 179 (Tex. 1997)). Therefore, the Court finds that the merger clause does not preclude Plaintiffs' fraud/fraudulent inducement claim.

*** 

Turning to the sufficiency of Plaintiffs' pleadings, Defendant alleges that Plaintiffs fail to plead facts to show that Mr. Ortiz's statements were fraudulent, or false when made.[70] Defendant contends that Plaintiffs fail to sufficiently plead their claims that Defendant had no intention of supporting Plaintiffs.[71] Plaintiffs counters that Defendant's eventual exclusion of ISS Guyana from the Deal discussions and meetings with the government of Guyana were indicators of Defendant's malicious intent not to perform any of the representations and that such representations were false.[72] However, Plaintiffs do not allege that Defendant began meeting with the Guyanese government or otherwise excluding ISS Guyana from the process until the new acting regional sales manager took over in 2019.[73] Mr. Ortiz made the aforementioned statements in 2017 and 2018.[74] Therefore, the Court finds that Plaintiffs have insufficiently pled that Mr. Ortiz's

---

[70] Def. Brief 20, ECF No. 8.
[71] *Id.* at 21.
[72] Am Compl. ¶¶ 43–49, 98, ECF No. 4.
[73] *See id.*
[74] *Id.* at ¶ 36.

statements were fraudulent *at the time they were made*. Thereby, Plaintiffs' fraud/fraudulent inducement claim is **DISMISSED**.

### F.  Fraud by Non-Disclosure

Plaintiffs lastly bring a claim for fraud by non-disclosure.[75] "Fraud by non-disclosure, a subcategory of fraud, occurs when a party has a duty to disclose certain information and fails to disclose it." *CBE Grp., Inc. v. Lexington L. Firm*, 993 F.3d 346, 353 (5th Cir. 2021) (quoting *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 219 (Tex. 2019)). Under Texas law, a plaintiff establishes fraud by non-disclosure by proving:

> (1) the defendant deliberately failed to disclose material facts; (2) the defendant had a duty to disclose such facts to the plaintiff; (3) the plaintiff was ignorant of the facts and did not have an equal opportunity to discover them; (4) the defendant intended the plaintiff to act or refrain from acting based on the nondisclosure; and (5) the plaintiff relied on the nondisclosure, which resulted in injury. In general, there is no duty to disclose without evidence of a confidential or fiduciary relationship . . . . [But] [t]here may [ ] be a duty to disclose when the defendant . . . made a partial disclosure that created a false impression . . . .

*Id.* (quoting *Bombardier Aerospace Corp.*, 572 S.W.3d at 219–20) (alterations in original).

Plaintiffs contend that Defendant had a duty to disclose information, "including but not limited to," its decision to conduct business meetings and deal discussions without Plaintiffs and the value of the deal contemplated by Defendant.[76] Plaintiffs contend that this information was material and that Defendant knew Plaintiffs were ignorant of these facts and had no opportunity to discover them.[77] Defendant contends that Plaintiffs fail to articulate facts sufficient to satisfy the heightened pleading standard under Rule 9(b) as Plaintiffs rely on claims based "upon information and belief" without articulating any factual basis for those beliefs.[78] Furthermore, Defendant

---

[75] Am. Compl. ¶¶ 104–08, ECF No. 4.
[76] *Id.* at ¶ 105.
[77] *Id.* at ¶ 106.
[78] Def. Brief 23, ECF No. 8.

contends that Plaintiffs fail to sufficiently plead that Defendant had a duty to disclose information to Plaintiffs.[79]

In *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*,[80] relied upon by Plaintiffs, the Supreme Court of Texas states that a fiduciary duty arises "as a matter of law in certain formal relationships, including attorney-client, partnership, and trustee relationships." 572 S.W.3d 12 at 220 (citation omitted). A confidential relationship is one in which the "parties have dealt with each other in such a manner for a long period of time that one party is justified in expecting the other to act in its best interest." *Id.* (citation omitted). "An informal relationship giving rise to a duty may also be formed from "a moral, social, domestic or purely personal relationship of trust and confidence.'" *Id.* The court further stated, "an informal relationship giving rise to a duty may also be created by a 'special relationship of trust and confidence [which] exist[s] prior to, and apart from, the agreement'" *Id.* (quoting *Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex. 2005) (per curiam)) (alteration in original). However, a duty to disclose may also arise "when one party makes a representation, which gives rise to the duty to disclose new information that the party is aware makes the earlier representation misleading or untrue[.]" *Solutioneers Consulting, Ltd. v. Gulf Greyhound Partners, Ltd.*, 237 S.W.3d 379, 385 (Tex. App. 2007).

Plaintiffs state that Defendant, for example in 2017 and 2018 through its representative Mr. Ortiz, told ISS Guyana[81] that it was committed to securing the Deal through ISS Guyana.[82] Then, in 2019, Plaintiffs aver that Defendant began acting to secure the Guyana Deal without ISS Guyana, cutting them out of the Deal.[83] The Court finds that ISS Guyana has thus sufficiently

---

[79] Def. Reply 9–10, ECF No. 18.
[80] In *Bombardier*, the court did not have to analyze whether the defendant owed a duty of disclosure as the defendant waived the issue during trial. *See* 572 S.W.3d 213, 222 (Tex. 2019).
[81] Again, Plaintiffs write "ISS Aviation," and the Court presumes this means Plaintiff ISS Guyana.
[82] Am Compl. ¶ 39, ECF No. 4.
[83] *Id.* at ¶¶ 41–55.

pleaded the existence of a duty to disclose. The Court further finds that ISS Guyana sufficiently pled the remaining elements of their fraud by non-disclosure claim. Therefore, Defendant's motion to dismiss this claim as to ISS Guyana is **DENIED**. Regarding ISS Wyoming, the Court finds that there is not enough information in the Amended Complaint as to ISS Wyoming's identity or role in this exchange. The Court thus finds that Plaintiffs have not pleaded sufficient facts to support any fraud by non-disclosure claim brought by ISS Wyoming. Defendant's motion to dismiss the fraud by non-disclosure claim is **GRANTED** as to ISS Wyoming.

## IV.    Conclusion

To conclude, the Court **DENIES** Defendant's motion to dismiss as to ISS Guyana's claim that Defendant breached an implied duty to cooperate under the 2018 IRA, but the Court **GRANTS** Defendant's motion to dismiss as to all Plaintiffs' other breach of contract claims. Among the claims being dismissed, all are **DISMISSED with prejudice** other than the claim regarding the transaction with Air Services, Ltd.

The Court **GRANTS** Defendant's motion to dismiss as to Plaintiffs' claims for quantum meruit, promissory estoppel, and unjust enrichment. As to ISS Guyana, these claims are **DISMISSED with prejudice**. As to ISS Wyoming, they are **DISMISSED without prejudice**.

The Court further **GRANTS** Defendant's motion to dismiss Plaintiffs' claim of fraud/fraudulent inducement. This claim is **DISMISSED without prejudice**.

Finally, the Court further **DENIES** Defendant's motion to dismiss ISS Guyana's fraud by non-disclosure claim and **GRANTS** Defendant's motion to dismiss any fraud by non-disclosure claim brought by ISS Wyoming. ISS Wyoming's fraud by non-disclosure claim is **DISMISSED without prejudice.**

The Court will now assess whether to grant Plaintiffs leave to file an amended complaint to cure their claims the Court dismissed without prejudice.

## <u>Motion for Leave to File an Amended Complaint</u>

As mentioned above, Plaintiffs filed a Motion for Leave to File Amended Complaint on October 25, 2022.[84] On November 8, 2022, Defendant filed a response opposing Plaintiff's motion for leave, highlighting that Plaintiffs failed to attach the proposed amended pleading to their motion as required under Local Rule 15.1(b).[85] However, on November 9, 2022, Plaintiffs filed an Amended Motion to Amend/Correct their prior motion, this time attaching Plaintiffs' proposed Second Amended Complaint, thereby mooting Defendant's objection.[86] Plaintiffs make clear that they filed their motion for leave as an alternative to its response to Defendant's Motion to Dismiss.[87]

### I.      Legal Standard

Federal Rule of Civil Procedure 15(a)(2) provides that "the court should freely give leave when justice so requires." *See also Lowery v. Texas A&M Univ. Sys.*, 117 F.3d 242, 245 (5th Cir. 1997) ("Rule 15(a) expresses a strong presumption in favor of liberal pleading"); *Nance v. Gulf Oil Corp.*, 817 F.2d 1176, 1180 (5th Cir. 1987) ("Rule 15(a) counsels a liberal amendment policy"). The decision to allow amendment of a party's pleadings is within the sound discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994) (citation omitted). "Leave to amend is in no way automatic, but the district court must possess a 'substantial reason' to deny a party's request for leave to amend." *Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (citation

---

[84] *See* Pls. Mot. for Leave, ECF No. 17.
[85] Def. Resp. 3, ECF No. 19.
[86] Proposed Sec. Am. Compl., ECF No. 20.
[87] Pls. Mot. for Leave ¶ 7, ECF No. 17.

omitted). "However, it is within the district court's discretion to deny a motion for leave to amend pleadings if the amendment would be futile." *Avdeef v. Royal Bank of Scotland*, No. 4:13-cv-967-O, 2014 WL 4055369, at *3 (N.D. Tex. Aug. 15, 2014) (citing *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872–73 (5th Cir. 2000)).

An amendment is futile if it could not survive a Rule 12(b)(6) motion. *Briggs v. Mississippi*, 331 F.3d 499, 508 (5th Cir. 2003). Therefore, the Court reviews the Proposed Second Amended Complaint under "the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000) (citation omitted). Thus, a plaintiff's amended complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). And a court should accept all well-pleaded facts and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007).

## II.    Analysis

### A.  Breach of Contract

The Court first finds that, regarding Plaintiffs' breach of contract claim involving the transaction with Air Services, Ltd., Plaintiffs' Proposed Second Amended Complaint does not cure the pleading issues from the First Amended Complaint, as found by the Court. Thereby, Plaintiffs' request for leave to file an amended complaint to cure the breach of contract claim is **DENIED**.

### B.  Quantum Meruit, Promissory Estoppel, and Unjust Enrichment

The Court finds the Proposed Second Amended Complaint provides more information regarding ISS Wyoming's purpose, activity, and how it fit into the business relationship between ISS Guyana and Defendant.[88] Therefore, the Court finds it would not be futile to grant leave to amend to cure ISS Wyoming's quantum meruit, promissory estoppel, and unjust enrichment claims. Therefore, leave file an amended complaint to amend ISS Wyoming's quantum meruit, promissory estoppel, and unjust enrichment claims is **GRANTED**.

### C.  Fraud/Fraudulent Inducement

In assessing Plaintiffs' Proposed Second Amended Complaint, the Court finds that Plaintiffs added sufficient details wherein granting leave to file an amended complaint to cure their fraud/fraudulent inducement claim would not be futile. As such, leave as to this claim is **GRANTED**.

### D.  Fraud by Non-Disclosure

The Court finds that Plaintiffs in their Proposed Second Amended Complaint added sufficient details wherein granting leave to file an amended complaint to cure ISS Wyoming's fraud by non-disclosure claim would not be futile. As such, leave as to this claim is **GRANTED**.

### E.  Conclusion

The Court finds that Plaintiffs' Motion for Leave to File Amended Complaint should be, and is, hereby **GRANTED in part** and **DENIED in part**. Therefore, accepting Plaintiffs' Second Amended Complaint, the Court finds that the remaining claims in this lawsuit are as follows:

- ISS Guyana's breach of contract claim regarding an implied duty to cooperate under the 2018 IRA;

---

[88] *See generally* Proposed Sec. Am. Compl., ECF No. 20.

- ISS Wyoming's quantum meruit, promissory estoppel, and unjust enrichment claims;

- Plaintiffs' fraud/fraudulent inducement claim; and

- Plaintiffs' fraud by non-disclosure claim.

All other claims are **DISMISSED with prejudice**.

      **SO ORDERED** this **30th day** of **May, 2023.**

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**